# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | § | |
|---|---|---|
| **In re:** | § | **CHAPTER 7 CASE** |
| | § | |
| **PRACS INSTITUTE SAN ANTONIO, LLC**, *et al.*, | § | **CASE NO. 13-50743** |
| | § | |
| | § | **(Jointly Administered)** |
| **Debtors.** | § | |

**MOTION TO EXTEND THE EXTENDED PRESERVATION PERIOD UNDER THE ORDER GRANTING MOTION TO EXTEND THE INITIAL MINIMUM PRESERVATION PERIOD UNDER THE ORDER GRANTING TRUSTEE'S MOTION FOR APPROVAL OF THE TRANSFER OF CUSTODY OF CERTAIN SPONSOR PROPERTY TO LACHMAN CONSULTANT SERVICES, INC.**

> **NOTICE:**
>
> **THIS PLEADING REQUESTS RELIEF THAT MAY BE ADVERSE TO YOUR INTERESTS.**
>
> **IF NO TIMELY RESPONSE IS FILED WITHIN 21 DAYS FROM THE DATE OF SERVICE, THE RELIEF REQUESTED HEREIN MAY BE GRANTED WITHOUT A HEARING BEING HELD.**
>
> **A TIMELY FILED RESPONSE IS NECESSARY FOR A HEARING TO BE HELD.**

TO THE HONORABLE CRAIG A. GARGOTTA, UNITED STATES BANKRUPTCY JUDGE:

COMES NOW Lachman Consultant Services, Inc. ("Lachman") and moves the Court to enter an order extending the term of its previous *Order Granting Motion to Extend the Extended Preservation Period Under the Order Granting Trustee's Motion for Approval of the Transfer of Custody of Certain Sponsor Property to Lachman Consultant Services, Inc.* [Dkt. 759] (the "Extended Preservation Order") which extended the term of its previous *Order Granting Trustee's Motion for Approval of the Transfer of Custody of Certain Sponsor Property to Lachman Consultant Services, Inc.* [Dkt. 729] (the "Preservation Order") and in support thereof,

would show the Court as follows:[1]

## I. PRELIMINARY STATEMENT

1. The Debtors in this case carried out medical research on behalf of third parties, including the Continuing Preservation Sponsors (as defined in Section 26). Thus, the preservation and destruction of the books and records in the custody of the Debtors was more complicated than in a typical Chapter 7 case. The Trustee was required to comply with state and federal privacy laws, and the Preservation Sponsors[2] (and other similarly situated entities that elected not to participate as Preservation Sponsors) had an interest in preserving and accessing the Sponsor Property for (a) ongoing or future research or (b) responding to inquiries from the federal Food and Drug Administration ("FDA").

2. Successfully resolving the Chapter 7 case required substantial cooperation among the Debtors, their Lenders, and the Funding Sponsors. Among other things, the parties agreed to the Preservation Order, which provided the funding to close the cases and transferred custody of certain relevant documents out of the estate so that they could be properly preserved, returned, or destroyed, as appropriate, in accordance with the Preservation Order.

3. When the Preservation Motion was filed, the Preservation Sponsors believed that the contemplated services related to the preservation, return, and destruction of Sponsor Property could be accomplished in two (2) years. Lachman and certain of the Preservation Sponsors

---

[1] The Preservation Order entered at Docket No. 729 granted multiple forms of relief that are not affected by this Motion or the requested extension.

[2] Capitalized terms not defined herein shall be given the same meaning assigned to them in the Extended Preservation Order, the *Motion to Extend the Initial Minimum Preservation Period Under the Order Granting Trustee's Motion for Approval of the Transfer of Custody of Certain Sponsor Property to Lachman Consultant Services, Inc.* (Docket No. 750) (the "Extended Preservation Motion"), the Preservation Order or the *Trustee's Motion for Approval of: (I) the Transfer of Custody of Certain Sponsor Property Lachman Consultant Services, Inc., (II) the Destruction of Any Unclaimed Sponsor Property, (III) the Abandonment of and Transfer to Team Support Services, LLC d/b/a Abraxas Worldwide of Certain Estate Property Qualifying as "Common Documents" Bearing on Sponsor Property, and (IV) a Compromise Related to Funding the Closing of these Chapter 7 Cases* (Docket No. 648) (the "Preservation Motion").

determined that an additional two (2) year term of operating under the terms of the Preservation Order was desirable, beneficial, and necessary. Accordingly, Lachman brought, and this Court granted, the Extended Preservation Motion. Lachman and certain of the Continuing Preservation Sponsors have determined that an additional two (2) year term of operating under the terms of the Extended Preservation Order is desirable, beneficial, and necessary. The terms of the Extended Preservation Order allow for an extension of the Extended Preservation Period "by agreement of Lachman and any remaining Continuing Preservation Sponsors that elect to continue their obligations as Continuing Preservation Sponsors after expiration of the Extended Preservation Period." *See* Extended Preservation Order, Dkt. 759, section 15.

4. The extension of the Extended Preservation Period will have no financial impact on the Debtors' Bankruptcy Estates. However, for purposes of clarity, after consultation with the Continuing Preservation Sponsors who have elected to become Second Term Continuing Preservation Sponsors (as defined below) as of the date of this Motion, Lachman asks for an order, in the proposed form attached hereto as **Exhibit A** (the "Second Extended Preservation Order") extending the term of the Extended Preservation Order until June 19, 2021 as it relates to the preservation of Sponsor Property. No other part of the Preservation Order, including without limitation, the provisions pertaining to Common Documents will be modified by the extension sought herein.

## II.     JURISDICTION

5. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334(b).

6. Consideration of this Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

7. Venue of these proceedings and this Motion is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

8. The statutory predicates for the relief sought herein are sections 105(a), 554, and 725 of the United States Bankruptcy Code (11 U.S.C. § 101 *et seq*.). The applicable Federal Rule of Bankruptcy Procedures (collectively, the "Bankruptcy Rules") is Rule 9019(b).

### III. BACKGROUND

9. On March 22, 2013 (the "Petition Date"), PRACS Institute, LLC and its affiliates, PRACS Institute Holdings, LLC, PRACS Institute Management, LLC, PRACS Institute Canada B.C., Ltd., and PRACS Institute Miami, LLC (collectively, "PRACS" or "Debtors") filed for protection under chapter 7 of the Bankruptcy Code.

10. Shortly before or upon filing their respective Chapter 7 bankruptcy petitions, the Debtors ceased operations and stopped providing services to the Research Sponsors.

11. In late May 2013 the Trustee, the Agent for the Lenders, and an initial group of fifteen (15) Funding Sponsors entered into the Global Agreement (as defined in the Preservation Motion) to provide funds from the Lenders' Cash Collateral and a Funding Sponsor Loan to allow the Trustee to liquidate the Debtors' assets, attempt to preserve and protect the Sponsor Property and Common Documents, and otherwise fund the administration of these Cases.

12. The Funding Sponsors hired Lachman to assist in identifying, inventorying, removing and retrieving the Sponsor Property from the PRACS facilities in accordance with the Master Protocol which was attached as an exhibit to the Global Agreement. The Master Protocol defined the roles and responsibilities of the parties thereto and the general methodologies to be utilized in the recovery process, with the goal of maintaining FDA and other regulatory compliance.

13. In 2013 and 2014, the Trustee sold the PRACS facilities in Fargo, North Dakota; St. Charles, Missouri; San Antonio, Texas; and Miami, Florida. Hence, after 2014, PRACS has not owned any physical facilities.

4

14. While these liquidation sales were ongoing, Lachman (in conjunction with the Trustee and his consultant) worked with the Funding Sponsors (as well as certain other Research Sponsors that became Non-Participating Sponsors pursuant to the terms of the Global Agreement) to locate and return certain Sponsor Property belonging to Funding Sponsors and Non-Participating Sponsors. However, at the time the Preservation Motion was filed, the retrieval of such Sponsor Property had not yet been completed.

15. Upon information and belief, at the time the Preservation Motion was filed, there were an estimated 25,000 Unsearched Boxes at the Third-Party Storage Locations[3]. The Debtors' Estates did not have sufficient funds to maintain or store those records while they were inventoried, returned, or destroyed.

16. Therefore, the Trustee, the Lenders, and the Funding Sponsors reached an agreement, as set forth in the Preservation Motion and the Preservation Order. In pertinent part, that agreement (a) transferred or abandoned custody of certain Sponsor Property to Lachman and (b) provided the necessary funding and protocols for Preservation Sponsors (through Lachman) to inventory, return, store, or destroy the Sponsor Property, as appropriate. The Trustee transferred custody of certain Sponsor Property (as described in Preservation Order, Dkt. 729, section 3.B.viii) to Lachman solely as a nominee in an administrative capacity in order to facilitate the retrieval and, as applicable, destruction of Sponsor Property, and with respect to the receipt of invoices for services rendered by Third-Party Storage Providers and collection and remittance of the funds necessary to pay the Third-Party Storage Providers, by virtue of the

---

[3] The terms "Third-Party Storage Locations" and "Third-Party Storage Providers" are defined in the Preservation Motion (see Preservation Motion, Dkt. 648, fn. 7), as amended by the Extended Preservation Motion (see Extended Preservation Motion, Dkt 750, fn. 3). Subsequent to the Extended Preservation Motion, the Sponsor Property located at Axis Clinicals LLC (Dilworth, MN) was transferred to Record Keepers, LLC (Fargo, ND) (an existing Third-Party Storage Location and Third-Party Storage Provider). Accordingly, Axis Clinicals LLC (Dilworth, MN) is deleted from the definitions of Third-Party Storage Locations and Third-Party Storage Providers. For the avoidance of doubt, the terms "Third-Party Storage Locations" and "Third-Party Storage Providers" do not include Iron Mountain locations in Houston, TX, St. Louis, MO. or Miami, FL/South Florida.

Preservation Order.

17. At the time of the Preservation Motion, the parties believed that two (2) years was a reasonable amount of time for the parties to decide whether the Sponsor Property would be retrieved or destroyed. However, the Continuing Preservation Sponsors and Lachman determined that it was beneficial to continue to store the Sponsor Property for an additional two (2) years and therefore sought an extension of the Initial Minimum Preservation Period. Accordingly, Lachman brought, and this Court granted, the Extended Preservation Motion. Lachman and certain of the Continuing Preservation Sponsors have determined that it is beneficial to continue to store the Sponsor Property for an additional two (2) years and therefore seek an extension of the Extended Preservation Period.

18. Under the Second Extended Preservation Order, the Research Sponsors may re-elect whether they want to be Second Term Continuing Preservation Sponsors using an election form substantially similar to the form used in 2017 and 2015 and attached hereto as **Exhibit B** (the "Second Extended Preservation Election Form"[4]). Seven (7) of the original Continuing Preservation Sponsors are filing a Second Extended Preservation Election Form with this Motion and two (2) other original Continuing Preservation Sponsors have indicated their intention to become Second Term Continuing Preservation Sponsors [5] and additional Continuing Preservation Sponsors, Preservation Sponsors or Electing Non-Preservation Sponsors (as defined

---

[4] Exhibit B contains two versions of the Second Extended Preservation Election Form, one version is for Continuing Preservation Sponsors who are electing to become Second Term Continuing Preservation Sponsors by filing the Second Extended Preservation Election Form with this Motion and the other version is for Continuing Preservation Sponsors, Preservation Sponsors or Electing Non-Preservation Sponsors who elect to become Second Term Continuing Preservation Sponsors after entry of the Second Extended Preservation Order.

[5] The Continuing Preservation Sponsors that are filing a Second Extended Preservation Election Form with this Motion are Madrigal Pharmaceuticals, Inc.; Alvogen, Inc. on behalf of itself and Alvogen Pine Brook, LLC; Sandoz, Inc.; 3M Company; Teva Pharmaceuticals USA, Inc. (along with Actavis, one of the original Preservation Sponsors, which is now an affiliate of Teva); Array BioPharma, Inc.; and Mylan, Inc. For these purposes, Teva and Actavis are counted as one Continuing Preservation Sponsor. The other Continuing Preservation Sponsors that have indicated their intention to become Second Term Continuing Preservation Sponsors are Pfizer, Inc. and Apotex, Inc.

in Section 32) may also elect to participate. Three (3) of the original Continuing Preservation Sponsors have definitively declined to continue to participate as Second Term Continuing Preservation Sponsors.[6]

19. The estimated cost of an additional two (2) years of storage for the Third-Party Storage Locations is $390,000. The cost of the Extended Preservation Period was approximately $475,000. As mentioned above, nine (9) Continuing Preservation Sponsors have elected or indicated their intention to participate as Second Term Continuing Preservation Sponsors as of the date of this Motion. If only those Continuing Preservation Sponsors participate as Second Term Continuing Preservations Sponsors, the cost per Second Term Continuing Preservation Sponsor for two (2) more years of storage for the Third-Party Storage Locations will be approximately $43,334. If more Continuing Preservation Sponsors, Preservation Sponsors or Electing Non-Preservation Sponsors elect to participate as Continuing Preservation Sponsors, the price per sponsor will decrease proportionately.

20. The payment of the storage fee described above does not cover any cost for retrieving documents and materials related to specific products or studies of an individual Continuing Preservation Sponsor. Such costs will be the subject of individual agreements between that Continuing Preservation Sponsor and Lachman.

### A. Second Extended Preservation Election Form

21. Pursuant to the Second Extended Preservation Election Form, each Continuing Preservation Sponsor, Preservation Sponsor or an Electing Non-Preservation Sponsor, may elect to become a Second Term Continuing Preservation Sponsor.

22. The Second Extended Preservation Election Form provides for any Continuing Preservation Sponsor, Preservation Sponsor or an Electing Non-Preservation Sponsor that elects to become a Second Term Continuing Preservation Sponsor to agree to (i) continue to be bound (or to be bound, in the case of a Preservation Sponsor (which is

---

[6] Osmotica Pharmaceutical Corporation; Groupe PARIMA Inc.; and TauRx Therapeutics Ltd. have indicated that they will not elect to be Second Term Continuing Preservation Sponsors.

7

not already a Continuing Preservation Sponsor) or an Electing Non-Preservation Sponsor) by all of the provisions of the Preservation Order applicable to Preservation Sponsors (as modified by the Extended Preservation Order) and the Extended Preservation Order (as modified by the Second Extended Preservation Order), and (ii) be bound by the Second Extended Preservation Order, including paying its pro rata share of the common costs (i.e., those costs that are not allocable to a particular Sponsor but benefit all such Sponsors collectively) incurred on behalf of Second Term Continuing Preservation Sponsors (the "STCPS Common Costs")[7] and its pro rata share of costs, including attorneys' fees, incurred by Lachman in bringing this Motion (the "Motion Costs"); and (iii) to indemnify, defend and hold Lachman harmless on a pro rata basis, for any demands, claims, losses, damages, judgments, expenses and costs (including attorneys' fees) arising out of or relating to the Iron Mountain Claim (as defined below) and/or the Unpaid Iron Mountain Locations (as defined below).

23. No additional payments will be required of the Second Term Continuing Preservation Sponsors which were Preservation Sponsors for Initial Destruction Costs Payment or the Initial Destruction Costs Deposit as provided in the Preservation Order. All Initial Destruction Costs Payments previously made by the Second Term Continuing Preservation Sponsors which were Preservation Sponsors shall continue to be held by Lachman for the sole and exclusive purpose of paying the costs associated with the destruction of Sponsor Property and Unsearched Contents, which destruction shall be carried out in accordance with the Preservation Order and the Extended Preservation Order.

24. The Second Extended Preservation Election Form (i) confirms as to the Second Term Continuing Preservation Sponsors the validity of the release of any and all Claims that was given at the time such Research Sponsor became a Preservation Sponsor and a Continuing Preservation Sponsor, and (ii) provides for a release of any and all Claims that any Second Term Continuing Preservation Sponsor has or may have against Lachman through and including the Effective Date (as defined below).

25. Each Continuing Preservation Sponsor, Preservation Sponsor or Electing Non-Preservation Sponsor that desires to become a Second Term Continuing Preservation Sponsor must have filed a Second Extended Preservation Election Form with this Motion or must complete and return the Second Extended Preservation Election Form **no later than 15 days after the Effective Date**, by e-mail to: d.petshaft@lachmanconsultants.com (David B. Petshaft, Esq., Chief Legal and Financial Officer of Lachman). The term "Effective Date" means the date that is one business day after the Second Extended Preservation Order becomes a final, non-appealable order.

A. **Second Term Continuing Preservation Sponsors**

26. A "Second Term Continuing Preservation Sponsor" is a Research Sponsor that has

---

[7] The STCPS Common Costs shall not include any costs, fees and expenses that are directly attributable to a Second Term Continuing Preservation Sponsor's individual material retrieval efforts.

8

previously elected to be a Continuing Preservation Sponsor or Preservation Sponsor or is an Electing Non-Preservation Sponsor and (a) wishes to preserve the Unsearched Boxes and Unsearched Contents located at the Third-Party Storage Locations, until at least June 19, 2021 (the "Second Extended Preservation Period"); (b) wishes to preserve an opportunity to retrieve individual study records or other materials constituting Sponsor Property that were stored with PRACS (either at a former PRACS location or any of the Third-Party Storage Locations) but that Lachman has not yet retrieved for such Continuing Preservation Sponsor, Preservation Sponsor or Electing Non-Preservation Sponsor, as the case may be, (c) has entered or enters into an agreement with Lachman to provide for the retrieval of its study records and materials, and (d) elects to become a Second Term Continuing Preservation Sponsor by having filed a Second Extended Preservation Election Form with this Motion or completing the Second Extended Preservation Election Form and returning it no later than 15 days after the Effective Date, or as otherwise provided pursuant to Section 32. The signed Second Extended Preservation Election Forms submitted with this Motion are attached hereto as **Exhibit C.** Any Second Term Continuing Preservation Sponsor that does not require the services of Lachman to retrieve individual study materials will not be required to enter an individual agreement with Lachman, provided that if any such Second Term Continuing Preservation Sponsor subsequently desires to retrieve its individual Sponsor Property, it will be required to enter into an individual agreement with Lachman prior to such retrieval.

27. Completing and signing the Second Extended Preservation Election Form shall constitute a Second Term Continuing Preservation Sponsor's agreement to (i) pay on a timely basis (a) its pro rata share of all STCPS Common Costs (such as rent, storage costs, utilities, insurance, IT services management/staff oversight and transportation costs incurred by Lachman or Third-Party Storage Providers on behalf of the Preservation Sponsors), (b) the Second Extended Preservation Sponsor Payment (as defined below), and (c) its pro rata share of the Motion Costs promptly upon written request of Lachman; and (ii) to indemnify, defend and hold Lachman harmless on a pro rata basis, for any demands, claims, losses, damages, judgments, expenses and costs (including attorneys' fees) arising out of or relating to the Iron Mountain Claim and/or the Unpaid Iron Mountain Locations.

28. By electing to become a Second Term Continuing Preservation Sponsor, each Second Term Continuing Preservation Sponsor agrees to issue payment to Lachman within sixty (60) days of receiving notification of the amount of its pro rata share of the total estimated STCPS Common Costs payable to Third-Party Storage Providers and Lachman for the entire Second Extended Preservation Period (the "Second Extended Preservation Sponsor Payment"), which notification Lachman shall provide as promptly as possible after the Effective Date. Calculation of the STCPS Common Costs will be based in large part on the estimated monthly costs and expenses for rent at the Third-Party Storage Locations. While these monthly costs may decrease prior to or after the Effective Date based upon ongoing efforts to reduce such costs, the current estimate of STCPS Common Costs for the entire Second Extended Preservation Period should not exceed $390,000.

29. Assuming nine (9) Continuing Preservation Sponsors elect to become Second Term Continuing Preservation Sponsors, the Second Extended Preservation Sponsor Payment will be approximately $43,334 per Second Term Continuing Preservation Sponsor. Reasonable efforts will be made to reduce and maintain STCPS Common Costs as low as possible. It is expected that the Second Extended Preservation Sponsor Payments will be deposited by Lachman for satisfaction of STCPS Common Costs, including payment of rent or storage costs at the Third-Party Storage Locations for the entire Second Extended Preservation Period and Lachman's reasonable fees and costs incurred on behalf of the Second Term Continuing Preservation Sponsors as agreed upon with the Second Term Continuing Preservation Sponsors.

30. For the avoidance of doubt, while the Second Extended Preservation Period Payment is expected to be sufficient to cover the current estimate of STCPS Common Costs for the entire Second Extended Preservation Period, the Second Extended Preservation Sponsor Payment may not be the only pro rata payment of STCPS Common Costs required to be made by the Second Term Continuing Preservation Sponsors during Second Extended Preservation Period. Some STCPS Common Costs may be unknown as of the Effective Date of Second Extended Preservation Order but will need to be paid at a later date by the Second Term Continuing Preservation Sponsors as such costs arise.

31. For the avoidance of doubt, any costs payable by Second Term Continuing Preservation Sponsors in their capacities as such are in addition to any other costs a Second Term Continuing Preservation Sponsor may be obligated to pay in connection with its own individual retrieval efforts.

32. **Due to the Second Term Continuing Preservation Sponsors' obligations to pay STCPS Common Costs in advance via the Second Extended Preservation Sponsors Payments, a Continuing Preservation Sponsor or a Preservation Sponsor that fails to (a) timely return a Second Extended Preservation Election Form containing an election to become a Second Term Continuing Preservation Sponsor or (b) timely make its pro rata share of the Second Extended Preservation Sponsor Payment, may become a Second Term Continuing Preservation Sponsor thereafter, if at all, only on such terms and conditions as are acceptable to Lachman and a majority of the then-current and voting Second Term Continuing Preservation Sponsors, in such Second Term Continuing Preservation Sponsors' sole and absolute discretion, which terms and conditions may include without limitation a substantial late fee to be determined by the Second Term Continuing Preservation Sponsors at the time such Continuing Preservation Sponsor or Preservation Sponsor elects to become a Second Term Continuing Preservation Sponsor. <u>For the avoidance of doubt, any Research Sponsor that is not a Continuing Preservation Sponsor or a Preservation Sponsor but wishes to become a Second Term Continuing Preservation Sponsor, now or at any time after the Effective Date, may do so only on terms and conditions</u> as are acceptable to Lachman and a majority of the then-current and voting Second Term Continuing Preservation Sponsors, in**

**such Second Term Continuing Preservation Sponsors' sole and absolute discretion, which terms and conditions will include, without limitation, a substantial late fee (reflecting among other things such Research Sponsor's non-payment of its pro rata share of the Initial Preservation Period Payment and Extended Preservation Sponsor Payment) to be determined by the Second Term Continuing Preservation Sponsors at the time such Research Sponsor elects to become a Second Term Continuing Preservation Sponsor. Any such Research Sponsor which is permitted to become a Second Term Continuing Preservation Sponsor pursuant to the foregoing sentence is referred to herein as an "Electing Non-Preservation Sponsor".** Following expiration of the time period for return of completed Second Extended Preservation Election Forms and payment of the Second Extended Preservation Sponsor Payment, under no circumstances shall a person or entity that is not a Second Term Continuing Preservation Sponsor be entitled to receive a return or copy of any portion of its Sponsor Property or the records subject to the Preservation Order, the Extended Preservation Order and the Second Extended Preservation Order remaining under the custody of Lachman, regardless of whether such portion constitutes Sponsor Property or Common Documents and regardless of whether such portion is necessary for response to any type of inquiry, from the FDA or otherwise. **Any Research Sponsor, including any Preservation Sponsor or Continuing Preservation Sponsor, that does not become a Second Term Continuing Preservation Sponsor is prohibited from naming Lachman as its contact for FDA inspections/audits.**

33. Lachman shall have no liability whatsoever to any person or entity, including any of the Research Sponsors (including Preservation Sponsors, Common Documents Sponsors, Continuing Preservation Sponsors and/or Second Term Continuing Preservation Sponsors), PRACS, the Trustee, the PRACS Estates, third parties, patients, physicians, healthcare providers, as well as each of their Related Parties, for loss, abandonment, destruction or non-destruction of, or damage to, any Sponsor Property or otherwise in connection with Lachman's acts and/or omissions with regard to the subject matter of the Second Extended Preservation Order, as a result of its compliance with the Second Extended Preservation Order, or any claims or obligations with respect to the Sponsor Property, arising prior to or after the Effective Date of the Second Extended Preservation Order, including but not limited to any and all claims, known or unknown, except loss or damage to the extent proximately resulting from Lachman's legally-established gross negligence or willful misconduct. Iron Mountain has asserted a claim for unpaid amounts for the storage of Sponsor Property at certain Iron Mountain facilities (the "Iron Mountain Claim") in Houston, TX, St. Louis, MO, and Miami, FL/South Florida (the "Unpaid Iron Mountain Locations"). The Unpaid Iron Mountain Locations were not identified in the original Preservation Motion[8] or the Extended Preservation Motion, and were not defined therein, nor otherwise, as "Third-Party Storage Locations". Accordingly, Lachman

---

[8] The Preservation Motion was brought by the Trustee and identified the Third-Party Storage Providers and Third-Party Storage Locations for which the Trustee had been paying rental and storage costs (see Preservation Motion, Dkt. 648, Section 10 and fn. 7) prior to transferring custody of the Sponsor Property to Lachman in accordance with the Preservation Order.

specifically shall have no liability whatsoever to Iron Mountain, any of the Research Sponsors (including Preservation Sponsors, Common Documents Sponsors, Continuing Preservation Sponsors and/or Second Term Continuing Preservation Sponsors), or any of their Related Parties in connection with the Iron Mountain Claim and/or the Unpaid Iron Mountain Locations, for loss, abandonment, destruction or non-destruction of, or damage to, any Sponsor Property or otherwise in connection with Lachman's acts and/or omissions with regard to the subject matter of the Preservation Order, the Extended Preservation Order or the Second Extended Preservation Order, as a result of its compliance with such Orders, or any claims or obligations with respect to the Sponsor Property, arising prior to or after the Effective Date of any of such Orders, including but not limited to any and all claims, known or unknown.

34. Notwithstanding anything to the contrary contained herein, consistent with Section 33 above, Lachman is acting solely as a nominee in an administrative capacity on behalf of the Second Term Continuing Preservation Sponsors with respect to the receipt of invoices for services rendered by Third-Party Storage Providers and collection and remittance of the funds necessary to pay the Third-Party Storage Providers and shall not bear any responsibility to the Third-Party Storage Providers for rent, storage and/or destruction costs.

35. Lachman shall retrieve individual Sponsor Property on behalf of requesting Second Term Continuing Preservation Sponsors subject to terms and conditions to be agreed upon between or among Lachman and such Second Term Continuing Preservation Sponsors, with such retrievals to occur during the Second Extended Preservation Period, provided however that Lachman may withdraw for cause from its obligations hereunder, with no liability, upon sixty (60) days' written notice to all Second Term Continuing Preservation Sponsors. Notwithstanding the foregoing, the Second Extended Preservation Period may be extended beyond its initial duration by agreement of Lachman and any remaining Second Term Continuing Preservation Sponsors that elect to continue their obligations as Second Term Continuing Preservation Sponsors after expiration of the Second Extended Preservation Period.

36. The Second Term Continuing Preservation Sponsors shall be severally (but not jointly) responsible for Lachman's reasonable and necessary fees and costs associated with the provision of services described herein (such amount to be allocated equally on a pro rata basis among all Second Term Continuing Preservation Sponsors). If a Continuing Preservation Sponsor elects to become a Second Term Continuing Preservation Sponsor, but fails to pay the Second Extended Preservation Sponsor Payment, such Continuing Preservation Sponsor shall not become a Second Term Continuing Preservation Sponsor. In this instance, Lachman shall have no duty or obligation to collect the Second Extended Preservation Sponsor Payment from any Continuing Preservation Sponsor that fails to comply with the terms of the Second Extended Preservation Order.

37. Except as otherwise set forth herein, in the Extended Preservation Order or in the

Preservation Order, unless and until different terms are agreed to between or among Lachman and the Second Term Continuing Preservation Sponsors, Lachman shall carry out its duties with regard to the Sponsor Property in its custody in accordance with the Preservation Order, the Extended Preservation Order and the Second Extended Preservation Order. Lachman shall have no obligations to the Research Sponsors (including the Preservation Sponsors, the Continuing Preservation Sponsors and the Second Term Continuing Preservation Sponsors) except as expressly provided in the Preservation Order, the Extended Preservation Order, the Second Extended Preservation Order, the Master Protocol, the Global Agreement, or another agreement, or another order of the Court, as any such order or agreement may be amended or otherwise modified.

38. If the ongoing STCPS Common Costs exceed the sum of money collected on account of each Second Term Continuing Preservation Sponsor's pro rata Second Extended Preservation Sponsor Payment, Lachman shall send written notice including an invoice for the additional pro rata STCPS Common Costs to each Second Term Continuing Preservation Sponsor. If a Second Term Continuing Preservation Sponsor fails to pay any amount for STCPS Common Costs due from it to Lachman within 60 days from the invoice date, Lachman may, at its option, (a) seek to compel payment in this Court or any other court of competent jurisdiction, and (b) until receipt of payment, suspend performance under any individual retrieval agreement with such delinquent Second Term Continuing Preservation Sponsor or otherwise refuse to perform any additional retrieval activities for such Second Term Continuing Preservation Sponsor. If, following the first anniversary of the Effective Date of the Second Extended Preservation Order, and the exhaustion of Lachman's remedies against the delinquent Second Term Continuing Preservation Sponsor, such amount for STCPS Common Costs remains unpaid, Lachman may request that the other Second Term Continuing Preservation Sponsors pay the unpaid pro rata portion of STCPS Common Costs attributable to the delinquent Second Term Continuing Preservation Sponsor, failing which payment Lachman may withdraw, without liability for doing so, from its role under the Second Extended Preservation Order on 60 days' written notice to all Second Term Continuing Preservation Sponsors.

39. **In addition to and not in lieu of the foregoing paragraph 38, (i) any Second Term Continuing Preservation Sponsor that fails to pay its pro-rata share of any additional STCPS Common Costs within sixty (60) days after receiving written notice shall cease being a Second Term Continuing Preservation Sponsor and shall be deemed to have abandoned and consented to the destruction of any of its Sponsor Property as of such sixtieth day; and (ii) any Continuing Preservation Sponsor that does not become a Second Term Continuing Preservation Sponsor shall be deemed to have abandoned and consented to the destruction of any of its Sponsor Property on or after the ninety-first day following occurrence of the Effective Date of the Second Extended Preservation Order (such Research Sponsors described in (i) and (ii), "Abandoning Continuing Preservation Sponsors").**

40. Any materials to be destroyed pursuant to the Second Extended Preservation Order

shall be totally destroyed as follows: (A) if the records are written, by completely shredding or burning the records; or (B) if the records are magnetic, optical or other electronic records, by otherwise destroying those records so that those records cannot be retrieved. Such destruction consistent with the foregoing requirements is sufficient for all purposes under state and federal law. Such destruction shall be deemed in compliance with all applicable law so long as the material is destroyed in the manner set forth in the Preservation Order, the Extended Preservation Order and the Second Extended Preservation Order. None of Lachman, the Third-Party Storage Providers, the Preservation Sponsors, the Continuing Preservation Sponsors, the Second Term Continuing Preservation Sponsors or any of their Related Parties shall have any liability whatsoever to each other or any Abandoning Continuing Preservation Sponsor for Sponsor Property that is abandoned or destroyed pursuant to the Second Extended Preservation Order. None of Lachman, the Third-Party Storage Providers, the Preservation Sponsors, the Continuing Preservation Sponsors, the Second Term Continuing Preservation Sponsors, or any of their Related Parties shall have any claim for contribution for costs or expenses incurred in connection with these Cases against any Research Sponsor that elects not to become a Second Term Continuing Preservation Sponsor hereunder.

41. Lachman (or another independent consultant hired by the Second Term Continuing Preservation Sponsors for destruction) shall have the reasonable discretion to arrange or request reasonable assistance from Third-Party Storage Providers for the destruction of property belonging to any Abandoning Continuing Preservation Sponsor, provided that Lachman shall not be obligated to the Second Term Continuing Preservation Sponsors to locate and destroy records, absent further agreement with the Second Term Continuing Preservation Sponsors. No further notice or order of the Court will be required.

42. As of and after the Effective Date, the Unsearched Boxes and Unsearched Contents shall be preserved for a period of at least the Second Extended Preservation Period in accordance with the terms and conditions agreed to by and among the Second Term Continuing Preservation Sponsors, Lachman, and one or more of the Third-Party Storage Providers, subject, however, to the reasonable discretion given to Lachman (or another independent consultant hired by the Second Term Continuing Preservation Sponsors for destruction) under the conditions described in Sections 39, 40, and 41 above, to arrange or request reasonable assistance from Third-Party Storage Providers for the destruction of property belonging to Abandoning Sponsors, Abandoning Preservation Sponsors and Abandoning Continuing Preservation Sponsors. It is anticipated that the Unsearched Boxes and Unsearched Contents will remain in storage and remain largely unsearched and undisturbed during the Second Extended Preservation Period. However, pursuant to separate agreements with individual Second Term Continuing Preservation Sponsors, Lachman shall retrieve any portion of the Unsearched Boxes and Unsearched Contents on behalf of one or more of the requesting Second Term Continuing Preservation Sponsors (it being understood that each Second Term Continuing Preservation Sponsor shall be solely responsible for the payment of all fees and expenses associated with any individual retrievals of Unsearched Boxes and Unsearched Contents on its behalf); provided

however that Lachman may withdraw from its obligations associated with any individual retrievals of Unsearched Boxes and Unsearched Contents under the terms of Lachman's agreement with that Second Term Continuing Preservation Sponsor.

43. Unless extended by agreement of Lachman and any Second Term Continuing Preservation Sponsors, any remaining Sponsor Property (including without limitation any of the Unsearched Boxes and Unsearched Contents) that is not retrieved or otherwise preserved prior to the expiration of the Second Extended Preservation Period will be deemed and considered abandoned and subject to destruction in accordance with the Preservation Order, the Extended Preservation Order and the Second Extended Preservation Order. In furtherance of the foregoing, the defined term "Ad Hoc Destruction Sponsors" as used in the Preservation Order, shall also include Second Continuing Preservation Sponsors.

44. Except as otherwise set forth herein, in the Preservation Order or in the Extended Preservation Order, unless and until different terms are agreed to between or among Lachman and the Second Term Continuing Preservation Sponsors, Lachman shall carry out its duties with regard to the Unsearched Boxes and Unsearched Contents in accordance with the Master Protocol and the Global Agreement. Lachman shall have no obligations to the Second Term Continuing Preservation Sponsors except as expressly provided in the Preservation Order, the Extended Preservation Order, the Second Extended Preservation Order, the Master Protocol, or another agreement, or another order of the Court, as any such order or agreement may be amended or otherwise modified.

45. Except as expressly amended hereby, the terms and provisions of the Preservation Order and the Extended Preservation Order shall remain in full force and effect.

## IV. ARGUMENT AND AUTHORITIES

46. For the reasons stated in the Preservation Motion, this Court has discretionary authority to approve a compromise under Rule 9019 of the Bankruptcy Rules. Here, the Second Extended Preservation Order, agreed upon by the Second Term Continuing Preservation Sponsors, falls within this Court's authority to settle controversies within classes afforded by Rule 9019(b) of the Bankruptcy Rules.

47. Section 105(a) of the Bankruptcy Code permits a court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. This section of the Code is to be construed liberally and therefore grants the

Bankruptcy Court broad discretion to carry out the purposes of the Bankruptcy Code. *See In re Sanchez*, 372 B.R. 289, 309 (Bankr. S.D. Tex. 2007). In connection with sections 554 and 725 of the Bankruptcy Code, section 105(a) provides discretionary authority to this Court to enter any order that is necessary or appropriate to assist the Trustee's abandonment and disposition of the Sponsor Property.

48. This Court has already granted the Preservation Order, finding that the compromise entered by the Trustee, the Lenders, and the Funding Sponsors was a proper exercise of the Trustee's business judgment, and that the compromises and protocols embodied in the Preservation Order were (a) authorized under sections 554 and 725 of the Bankruptcy Code; and (b) in the best interest of the Debtors, their estates, and the parties-in-interest. Further, this Court provided in section 3.E.vi of the Preservation Order that this Court shall retain exclusive jurisdiction to enforce and order compliance with the Global Agreement and the Preservation Order. By this Motion, Lachman, with the agreement of certain Second Term Continuing Preservation Sponsors, simply seeks to extend the terms of the Extended Preservation Order (which extended the Preservation Order) for an additional two (2) years. Such relief will assist with the orderly administration of property disposed of by the Trustee pursuant to sections 554 and 725 of the Bankruptcy Code and the enforcement of the Preservation Order and the Extended Preservation Order.

49. There is no financial impact on the Debtors' estates and no impact on the administration of these Cases by extending the terms of the Extended Preservation Order (which extended the Preservation Order) by an additional two (2) years. Because participation in the Second Extended Preservation Period is purely voluntary by each Second Term Continuing Preservation Sponsor, no party will be adversely affected by extending the Extended

Preservation Order (which extended the Preservation Order) as requested herein.

## V. CONCLUSION

50. The Second Term Continuing Preservation Sponsors have determined that it is in their best interests to extend the terms of the Extended Preservation Order (which extended the Preservation Order) through and including June 19, 2021, and are willing to pay the associated costs with continuing storage and retrieval. Lachman is willing to continue providing the services described herein on the terms set forth above. The requested extension will have no adverse impact on the Debtors, the Trustee, the Cases, or any other party-in-interest. Accordingly, it is a sound exercise of the Bankruptcy Court's discretion under section 105(a) of the Bankruptcy Code to extend the term of the Extended Preservation Order (which extended the Preservation Order) for an additional two (2) years, through and including January 19, 2021.

**WHEREFORE**, Lachman respectfully requests entry of an Order extending the term of the Extended Preservation Order (which extended the Preservation Order) for an additional two (2) years, through and including January 19, 2021 and for such other or further relief as the Court deems just and proper.


Exhibit A     Second Extended Preservation Order

Exhibit B     Second Extended Preservation Election Form

Exhibit C     Signed Second Extended Preservation Election Forms submitted with this Motion


Dated:        May 29, 2019

Respectfully submitted,

*/s/ Alex S. Valdes*
Alex S. Valdes
State Bar No. 24037626
Devin B. Hahn
State Bar No. 24104047
WINSTEAD PC
401 Congress Avenue
Suite 2100
Austin, Texas 78701
(512) 370-2800- Telephone
(512) 370-2580 - Telecopier
Email: avaldes@winstead.com
Email: dhahn@winstead.com

**COUNSEL FOR LACHMAN CONSULTANT SERVICES, INC.**

## CERTIFICATE OF SERVICE

I certify that on May 29, 2019, a true and correct copy of the above and foregoing was served upon those parties registered to receive electronic notices with the Court's CM/ECF noticing system and on the parties listed on the attached Service List by United States Postal Service First Class Mail:


*/s/ Devin B. Hahn*
Devin B. Hahn